## Westmoreland County, to use, v. Westmoreland Brewing Company et al.

*Tax liens—Lien of Commonwealth for taxes—Lien of local authorities for taxes—Priority of Commonwealth—Acts of June 15, 1911, and May 16, 1923—Statutes—Repeal.*

1. The Commonwealth's lien for taxes has priority over the tax liens of cities, counties, boroughs, townships, school or poor districts in a distribution of a fund raised by a sheriff's sale of the real estate of a corporation.

2. The Act of June 15, 1911, P. L. 955, relating to the priority of liens of the Commonwealth for its taxes, is not repealed directly or by implication by the Act of May 16, 1923, P. L. 207, relating to the lien of taxes of cities, counties, boroughs, townships and school or poor districts.

3. The courts do not favor a construction which by implication will repeal an old act by a new one.

Exceptions raised by State to sheriff's distribution of fund. C. P. Westmoreland Co., Aug. T., 1925, No. 435.

*J. E. Kunkle*, for plaintiff; *Alex. McConnell*, for State.

No appearance for defendants.

Dom, J., May 8, 1926.—The instant case comes before us on exceptions to a sheriff's distribution. The fund for distribution was realized by a sale of the defendant's property; the money for distribution amounts to $5100. The

Westmoreland County, to use, *v.* Westmoreland Brewing Company et al.

sheriff first distributed to the tax claims of the Commonwealth, the debt, interest and costs, amounting to $2671.80, and then, on account of debt and interest and the costs, to the *lev. fa.*, No. 137, August Term, 1925, upon which the property was sold. There is not sufficient fund to pay the *bona fide* claims of the State, on the one hand, and the taxes due the County, the Borough and School District of Sutorville Borough, on the other hand; and it is the contention of the plaintiff that the sheriff erred in *not* first distributing to him, at the *levari facias*, the taxes of the county, school and borough. The issue, therefore, resolves itself into a question of priority of payment. Diligent search of the authorities by us has failed to disclose a ruling case or one nearly in point, and our attention has not been called by any of the counsel concerned to such a case. So we fully realize the difficulties of a correct solution of the issue involved.

The act of assembly relied upon by the plaintiff reads as follows:

"Section 2. All taxes which may hereafter be lawfully imposed or assessed on any property in this Commonwealth . . . shall be and they are hereby declared to be a *first lien* on said property; . . . and such liens shall have priority to and be fully paid and satisfied out of the proceeds of any judicial sale of said property *before any other obligation, judgment, claim, lien or estate* with which the said property may become charged or for which it may become liable, save and except only the costs of the sale and of the writ upon which it is made:" Act of May 16, 1923, P. L. 207.

The said act is the act under which the sale of the Westmoreland Brewing Company property, situate in Suterville Borough, Westmoreland County, was made.

The title to said act reads as follows: "An act providing when, how, upon what property, and to what extent, liens shall be allowed for taxes and for municipal improvements, for the removal of nuisances, and for water rents or rates, sewer rates and lighting rates; for the procedure upon claims filed therefor; the methods for preserving such liens and enforcing payment of such claims; the effect of judicial sales of the properties liened; the distribution of the proceeds of such sales, and the redemption of the property therefrom; for the lien and collection of certain taxes heretofore assessed, and of claims for municipal improvements made and nuisances removed within six months before the passage of this act; and for the procedure on tax and municipal claims filed under other and prior acts of assembly."

Section 1 of said Act of 1923 defines the meaning of *taxes* as follows: "That the word 'taxes,' as used in this act, means any county, city, borough, incorporated town, township, school, bridge, road or poor taxes."

Section 3 of said Act of 1923 provides as follows: "All municipal claims . . . shall be and they are hereby declared to be a lien; . . . and said liens shall have priority to and be fully paid and satisfied out of the proceeds of any judicial sale of said property, before any other obligation, judgment, claim, lien or estate with which the said property may become charged, or for which it may become liable, save and except only the costs of the sale and of the writ upon which it is made, and the taxes imposed or assessed upon said property."

It is under the Act of 1923 that the plaintiff relies to have his exceptions sustained.

The State depends upon the Act of June 15, 1911, P. L. 955, the title to which is as follows: "An act making State taxes, unpaid bonus, interest, penalties, and all public accounts, a first lien upon the franchise and property of corporations, companies, associations, joint-stock associations, and limited

partnerships against which the same may be settled; providing for enforcing the payment thereof, and for the furnishing of certificates as to the existence of such liens upon application thereof; and repealing section four of the Act approved April sixteenth, one thousand eight hundred and twenty-seven."

Section 1 of said act is as follows: "That from and after the passage of this act, all State taxes imposed under the authority of any law of this Commonwealth now existing or that may hereafter be enacted, and unpaid bonus, interest, penalties, and all public accounts settled against any corporation, company, association, joint-stock association, or limited partnership, shall be a first lien upon the franchise and property, both real and personal, of such corporation, company, association, joint-stock association, or limited partnership, from the date when they are settled by the Auditor General and approved by the State Treasurer; and whenever the franchise or property of a corporation, company, association, joint-stock association, or limited partnership, shall be sold at a judicial sale, all taxes, interest, bonus, penalties, and public accounts due the Commonwealth, shall first be allowed and paid out of the proceeds of such sale, before any judgment, mortgage, or any other claim or lien against such corporation, company, association, joint-stock association, or limited partnership."

A reading of the Act of 1923 discloses that the subjects dealt with are city, borough, township and school taxes and municipal claims for improvements; it is State-wide in its scope, but its application is local. As to local taxes imposed or assessed on any property in the municipality, it provides for liens, the methods of procedure for preserving liens, enforcing payment, and the distribution of the proceeds of judicial sales. It promotes the welfare of the municipality in preference to individual creditors by providing that the taxes and municipal claims shall be fully satisfied "before any other obligation, judgment, claim, lien or estate. . . ." None of the words just enumerated can by any stretch of the imagination be made to apply to State taxes against corporations; such is made doubly clear when we read the 3rd section, wherein it provides for the payment of municipal claims before "any other obligation, etc.," save the taxes imposed or assessed upon property. So we clearly see that "obligation," "judgment," "claim," "lien," "estate" does not include taxes of any sort; if it does not comprise *local taxes*, it cannot signify State taxes against corporations, etc. So we can, with reasonable safety, conclude that in the use of said particular language, a payment of municipal taxes ahead of State taxes was not in contemplation of the legislature. The act does stipulate that municipal taxes and municipal claims for improvements shall be and they are hereby declared to be liens; but to us it is inconceivable that the legislature, always seeking "ways and means" to raise sufficient revenues for State purposes, should postpone the claims of the State against the franchises and properties of corporations created by the State to municipal claims for improvements; and if not to improvements, why then to local taxes? The Act of 1923 makes both taxes and claims for improvements liens, and taxes a first lien over improvement claims, but, as we view it, neither is preferred to State taxes, because we can see no legislative intent in the statute, everything considered.

Let us look a moment at the Act of 1911. It is an act to make State taxes against corporations a first lien; further, it provides that in case of judicial sale of its franchises and property, all taxes due the Commonwealth shall first be allowed and paid "before any judgment, mortgage *or any other claim or lien against such corporation*. . . ." Does the Act of 1923 repeal this Act of 1911 by implication? It does not affirmatively. If it does, the excep-

Westmoreland County, to use, *v.* Westmoreland Brewing Company et al.

tions should be sustained; if it does not, they should be dismissed. The exceptant wants us to say that the said acts are inconsistent; that they cannot be reconciled, and that the one repeals the other, at least in so far as to payment of the local tax.

As we have said, there is no specific repeal of the Act of 1911 by the Act of 1923. Is there such a strong repugnancy or irreconcilable inconsistency between the two acts as requires us to declare a repeal by implication? Or can they, by any reasonable construction, be construed together and both be sustained?

From an examination of many authorities, it appears that the courts have been strongly against the repeal of an old statute by implication where there is not such total repugnancy in the new as to lead to the conclusion that the new annulled and was intended to repeal the old.

The Act of 1911 deals with State taxes from corporations; the Act of 1923 is concerned with local taxes and claims for improvements. The objects of the two statutes are different; the latter does not cover the subject-matter of the former and it is not a substitute for it.

It is common knowledge that more than one-half of the Commonwealth's revenue is derived from direct taxation of corporations; the State is the sovereign power and its very existence, almost, depends upon its well-financed government; counties, townships and such are subordinate and have no right of taxation except as given to them by the State; it is illogical to conclude that the legislature intended to abrogate the Commonwealth's chief sustaining power.

Surely it cannot be said that there is any similarity in objective between the two statutes. True, both refer to taxes, etc., but the Act of 1911 deals exclusively with corporations and the like and taxes due from them to the State, while the Act of 1923 merely regulates local taxes and claims for municipal improvements and gives them priority over judgments, etc. The Act of 1923 is intended to advance the welfare of a community in preference to any individual thereof, and gives local taxes a priority over claims ordinarily local, while the Act of 1911 is calculated to promote the public interest of the whole State in preference to any particular locality.

Both acts speak of "first liens," it is true, but the Act of 1911 specifically makes the corporation tax due the State a first lien, while the other is intended to classify local obligations, and within the group classification gives preference to taxes. We can see nothing in the Act of 1923 that justifies the conclusion that local taxes shall be a first lien and entitled to priority over taxes due the State from corporations; but we can well see, as we have indicated, that the legislature meant to put liens within specified localities in one classification, and then give the taxes of that class, local taxes, preference over claims for improvements, judgments, etc., without any intention of thereby interfering with the Act of 1911. The Act of 1923 gives us a general system concerning liens and the order of payment, etc., for localities, while the Act of 1911 is in a sense a special act which the welfare of the State had made necessary; and it is against our better reason to hold that the legislature, in framing the act for the disposition of local taxes, etc., thereby intended to repeal the Act of 1911, relating to a specific tax due the State against a special class of property, and which is of such vital importance to the State.

It has been said that laws are presumed to be passed with deliberation and with knowledge of existing ones, and that the legislative intent is the vital force of a statute. It has been further said that the preservation of the government and the means to successfully carry it forward should be our

Westmoreland County, to use, *v*. Westmoreland Brewing Company et al.

first thought. Why, then, should we feel a disposition to favor a repeal by legislative implication or to impair the force of the Act of 1911 by judicial construction?

Considering the object of each statute—the one to safeguard the locality by providing that taxes shall be paid to the municipality before payment of claims to individuals; the other to protect to a certainty the State's chief source of revenue—we conclude, notwithstanding the Act of 1923 may, if taken grammatically and strictly, appear to be inconsistent with the Act of 1911, that the intention of the legislature not to repeal the Act of 1911 is apparent, and that it, therefore, remains altogether unaffected by the Act of 1923.

And now, May 4, 1926, after due consideration, it is ordered, adjudged and decreed that the exceptions to the sheriff's schedule of distribution be and they are hereby dismissed, at the costs of exceptants.

From William S. Rial, Greensburg, Pa.